IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                     No. 3:22-cr-00057-HZ

                Plaintiff,                     OPINION & ORDER

    v.

ZAKARY GLOVER,

                Defendant.


Daniel Grunert
U.S. Department of Justice
150 M St NE
Washington, DC 20002

Gavin W. Bruce
U.S. Attorney's Office
405 E 8th Ave #2400
Eugene, OR 97401

       Attorneys for Plaintiff

Stephen R. Sady
Peyton Elizabeth Lee
Office of the Federal Public Defender
101 SW Main St, Ste 1700
Portland, OR 97204

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Defendant Zakary Glover was indicted for deprivation of a federal right under 18 U.S.C. § 242 and kidnapping under 18 U.S.C. § 1201(a)(1). He moves to dismiss both counts of the indictment. The Court held oral argument on March 30, 2023. For the following reasons, the Court denies Defendants' motions to dismiss.

## BACKGROUND

      The indictment alleges as follows: Defendant worked as a Direct Support Crisis Specialist for the Oregon Department of Human Services, Office of Developmental Disabilities Stabilization and Crisis Unit ("SACU"). Indictment ¶ 1. As part of his duties, Defendant took Adult Victim 1 ("AV1"), a resident of the SACU where Defendant worked, on outings to fast food restaurants in a secure van. *Id.* ¶¶ 5,7. AV1 has severe autism and cognitive defects and is barely verbal. *Id.* ¶ 6. On or about November 2, 2021, Defendant took AV1 on an outing and drove down a dead-end road toward a cemetery in Aumsville, OR. *Id.* ¶ 8. Defendant then "parked the van, opened the passenger rear door where AV1 was sitting, lowered his shorts, grabbed AV1, and engaged in sexual misconduct." *Id.* ¶ 9. Defendant later drove AV1 back to the SACU. *Id.* ¶ 10.

      Count one of the indictment charges Defendant Glover with deprivation of rights under 18 U.S.C. § 242 for willfully depriving AV1 of the fundamental right to bodily integrity. *Id.* ¶¶ 11-12. Count two of the indictment charges Defendant Glover with kidnapping in violation of 18

U.S.C. § 1201(a)(1). *Id.* ¶¶ 13-14. Defendant moves to dismiss both counts. Def. Mot. to Dismiss Count One, ECF 24; Def. Mot. to Dismiss Count Two, ECF 25.

Defendant has also been indicted in state court for rape in the first degree, sexual abuse in the first degree, kidnapping in the second degree, and official misconduct in the first degree. Def. Mot. to Dismiss Count Two 1-2.

On November 30, 2021, Detectives Yoder and Hegney, of the Oregon State Police, conducted an interrogation of Defendant at Defendant's home. Def. Mot. to Suppress Ex. A. (Tr.), ECF 28. A state trooper was present as backup. Def. Mot. to Suppress 14, ECF 23. Defendant moved to suppress his statements made at the interrogation and all derivative evidence. ECF 23. The Court heard oral argument on the motions on March 30, 2023.

## MOTION TO SUPPRESS

At oral argument, the Court granted Defendant's motion to suppress, which the Government did not oppose. The Court denied Defendant's request for a hearing under *Kastigar v. United States*, 406 U.S. 441 (1972). The Court adheres to its rulings.

## MOTIONS TO DISMISS

Defendant moves to dismiss both counts of the indictment for failing to state proper crimes. Defendant raises both facial and as-applied challenges to the statutes under which he is charged. The Court concludes that the indictment of Defendant Glover states proper crimes, and therefore denies both motions to dismiss.

### I.    Standard

The Federal Rules of Criminal Procedure require the indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Cr. P. 7(c)(1). It must also "give the official or customary citation of the statute, rule, regulation,

or other provision of law that the defendant is alleged to have violated." *Id.* The Supreme Court has held "that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The statutory language may be used to describe the offense, but a statement of the facts should also be included. *Id.*

An indictment that fails to state a cognizable offense must be dismissed. *United States v. Milovanovic*, 678 F.3d 713, 717, 719-20 (9th Cir. 2012), *as amended* (May 22, 2012) (holding that the indictment adequately alleged the statutory elements of the offense). But a court cannot dismiss a facially valid indictment because the evidence may be insufficient to support a conviction. *Costello v. United States*, 350 U.S. 359, 363 (1956) (rejecting argument that the indictment should be dismissed because it relied on hearsay). "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

## II.    Count I

Count one of the indictment charges Defendant Glover with deprivation of rights under 18 U.S.C. § 242 for willfully depriving AV1 of the fundamental right to bodily integrity under the Due Process Clause. Indictment ¶¶ 11-12. The statute provides criminal penalties for "[w]hoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States[.]" 18 U.S.C. § 242. Defendant challenges the statute both facially and as applied to him. Def. Mot. to Dismiss Count One.

Defendant presents four theories in support of his motion. First, he argues that the statute is unconstitutionally vague. Def. Mot. to Dismiss Count One 4-8. Second, he argues that to avoid vagueness, the statute must be construed to require a specific intent to violate a defined constitutional right, and the indictment fails to allege either the requisite intent or a defined constitutional right. *Id.* at 8-12. Third, Defendant argues that the statute exceeds Congress's legislative authority under § 5 of the Fourteenth Amendment and violates federalism principles. *Id.* at 12-16. Finally, he argues that if the statute is read narrowly to avoid violation of federalism principles, the indictment fails to adequately allege that Defendant acted under color of law. *Id.* at 16-22.

 A.  Whether § 242 Is Unconstitutionally Vague

Defendant first challenges the statute as unconstitutionally vague. To mount a facial challenge to a congressional statute, Defendant "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

The Supreme Court has long held that the Government violates the Fifth Amendment's Due Process Clause when it "tak[es] away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Defendant argues that both the willfulness standard and the scope of rights encompassed by the statute are unconstitutionally vague. Def. Mot. to Dismiss Count One 4-8.

In *Screws v. United States*, the Supreme Court addressed the constitutionality of a prior, materially identical version of the statute. 325 U.S. 91, 93 (1945). The petitioners in *Screws*, who like Defendant were charged with depriving the victim of a right secured under the Due Process Clause, argued that there was no ascertainable standard of guilt because of the fluidity of due

process jurisprudence. *Id.* at 94-96. The Supreme Court rejected the argument and construed the

statute such that it was constitutional. *Id.* at 100. The Supreme Court construed "willfully" to

require "a specific intent to deprive a person of a federal right made definite by decision or other

rule of law[.]" *Id.* at 103. This interpretation of willfulness defeated the argument that the statute

was vague because the scope of rights it encompassed was vague. *Id.* at 104. The Supreme Court

concluded: "willful violators of constitutional requirements, which have been defined, certainly

are in no position to say that they had no adequate advance notice that they would be visited with

punishment." *Id.* at 105. The *Screws* Court rejected a reading of the statute that would exclude

due process rights from the scope of protected rights. *Id.*

      While Defendant criticizes *Screws*, Def. Mot. to Dismiss Count One 4, the Government

correctly points out that the Supreme Court upheld § 242 against later vagueness challenges,

Gov. Resp. 4-5, ECF 29. In *United States v. Lanier*, the Supreme Court emphasized that due

process rights that were settled and specific did not pose vagueness problems. 520 U.S. 259, 267

(1997). If prior court decisions "gave reasonable warning that the conduct then at issue violated

constitutional rights," no vagueness problem was present. *Id.* at 269. The Supreme Court

concluded that a conviction under § 242 required no greater notice than the "clearly established"

law standard for liability under 42 U.S.C. § 1983. *Id.* at 270. The Court is bound by this

precedent. *Screws* and *Lanier* foreclose Defendant's facial challenge to the statute.

      B.     Whether the Indictment Alleges Willfulness and a Defined Constitutional Right

      Defendant's second argument is that § 242 must be narrowly construed to avoid

vagueness and that under this construction, the indictment fails to allege a violation of § 242.

Def. Mot. to Dismiss Count One 8-12. Defendant argues that "the statute must be read to require

an explicit, specific intent to violate a defined constitutional right," and that the indictment fails

to allege the requisite intent or constitutional right. *Id.* at 9. The Court concludes that the indictment adequately alleges both the mental state and a defined constitutional right.

       i.       Defined Constitutional Right

The indictment alleges that Defendant deprived AV1 of the fundamental right to bodily integrity when he sexually assaulted her. Indictment ¶ 12. A right is clearly established if the statute standing alone or as interpreted by the Supreme Court or Court of Appeals put the defendant on notice that the conduct violated the statute. *Lanier*, 520 U.S. at 269. The facts in a prior decision need not exactly match the defendant's conduct. *Id.* at 268-69. *See also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (reaffirming *Lanier*).

The Ninth Circuit recognizes the right to be free from state-imposed violations of bodily integrity under the Fourteenth Amendment, which encompasses the right to be free from sexual assault by state employees. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 434, 438 (9th Cir. 1997) (student was sexually abused by school janitor); *Fontana v. Haskin*, 262 F.3d 871, 875, 881 n.6 (9th Cir. 2001) (defendant police officer sexually harassed plaintiff after placing her in squad car); *United States v. Gonzalez*, 533 F.3d 1057, 1059, 1064 (9th Cir. 2008) (defendant police officer sexually assaulted several women during traffic stops, in one instance driving the victim to "a desolate parking lot" to commit the assault and then driving her back to her vehicle); *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1158, 1162 (9th Cir. 2020) (staff member at county facility that housed juveniles sexually harassed one of the juveniles). *See also Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.").

Ninth Circuit caselaw gave Defendant notice that his conduct violated the Constitution. The indictment adequately alleges violation of a defined constitutional right.

        ii.     Willfulness

The Ninth Circuit has explained that an individual "may act with the specific intent to violate a constitutional right without 'thinking in constitutional terms'" because "to 'act willfully in the sense in which we use the word [is to] act in open defiance *or reckless disregard* of a constitutional requirement that has been made specific and definite.'" *United States v. Reese*, 2 F.3d 870, 881 (9th Cir. 1993) (quoting *Screws*, 325 U.S. at 105).

Count One of the indictment alleges that Defendant "did willfully deprive AV1 of liberty without due process of law, which includes the fundamental right to bodily integrity[.]" Indictment ¶ 12. The willfulness element in the indictment attaches to the deprivation of rights. The indictment adequately alleges the mental state required.

Defendant analogizes his case to *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999) and *United States v. Keith*, 605 F.2d 462 (9th Cir. 1979). Def. Mot. to Dismiss Count One 10. Neither applies here. In *Du Bo*, the indictment of the defendant was facially deficient because it failed to allege the mens rea of "knowingly or willingly," an implied, necessary element of the offense. 186 F.3d at 1179. And in *Keith*, the indictment failed to allege essential elements of the mental state required for involuntary manslaughter because it relied on statutory language that did not include all essential elements and that courts had not consistently defined such that there was notice to the defendant of those elements. 605 F.2d at 463, 465. Here, the indictment includes the mens rea of "willfully," and that mental state has been defined by Supreme Court and Ninth Circuit decisions such that there was notice to Defendant.

C.    Whether Congress Had the Power to Enact § 242

Defendant argues that § 242 exceeds Congress's authority under § 5 of the Fourteenth Amendment because it is too broad in scope, and further that Defendant's conduct falls outside the scope of what Congress intended to cover. Def. Mot. to Dismiss Count One 12-16. According to Defendant, Congress's goal in enacting § 242 was to protect Black citizens from violence and discrimination, and circumstances have changed since the statute was enacted such that the statute is overbroad and cannot be upheld. Def. Mot. to Dismiss Count One 14-15.

Congress's legislative powers are limited to those granted by the Constitution. *Marbury v. Madison*, 1 Cranch 137, 176 (1803). The Fourteenth Amendment, enacted in the wake of the Civil War, imposed new restrictions on the states and served as an additional guarantee of existing individual rights. U.S. Const. Am. XIV, § 1; *United States v. Cruikshank*, 92 U.S. 542, 554 (1875). The Amendment also gave Congress "power to enforce, by appropriate legislation," the other provisions of the amendment. Am. XIV, § 5. "By imposing explicit limits on the powers of the States and granting Congress the power to enforce them, the Amendment 'fundamentally altered the balance of state and federal power struck by the Constitution.'" *Alden v. Maine*, 527 U.S. 706, 756 (1999) (quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59 (1996)).

Under § 5, Congress may enact remedial legislation but may not substantively change governing law. *Tennessee v. Lane*, 541 U.S. 509, 520 (2004). The Supreme Court requires "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* (internal quotations omitted). Statutes that do not meet this test are unconstitutional. *E.g.*, *United States v. Morrison*, 529 U.S. 598, 619-27 (2000) (holding that the civil remedy provision of the Violence Against Women Act exceeded Congress's § 5

enforcement power because it regulated private actors); *City of Boerne v. Flores*, 521 U.S. 507, 530-36 (1997) (striking down the Religious Freedom Restoration Act because there was no evidence of modern generally applicable laws motivated by religious bigotry and the statute represented a major intrusion into state government). Courts often consider the legislative history to determine the nature and scope of the problem Congress sought to address. *E.g.*, *Morrison*, 529 U.S. at 620. Courts also consider whether the circumstances on which Congress relied in enacting the legislation still exist. *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 545-47 (2013) (concluding that parts of the Voting Rights Act were no longer justified because circumstances had changed since the Act was last upheld).

The Court concludes that § 242 was a constitutional exercise of Congress's § 5 enforcement power. The Supreme Court has stated that Congress had the power to enact § 242. *United States v. Price*, 383 U.S. 787, 789 (1966) ("We have no doubt of 'the power of Congress to enforce by appropriate criminal sanction every right guaranteed by the Due Process Clause of the Fourteenth Amendment.'") (quoting *United States v. Williams*, 341 U.S. 70, 72 (1951)). And the language of the statute shows that Congress intended it to be remedial rather than to create substantive rights. The statute provides for criminal punishment for those who, under color of law, deprive a person of "any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States[.]" 18 U.S.C. § 242.

Defendant's motion concedes that Congress had a sound basis for enacting § 242. Defendant's motion acknowledges that in enacting the statute, Congress was attempting to address a wide range of restrictive state laws as well as beatings and massacres. Def. Mot. to Dismiss Count One 15. And while violence and discrimination directed at Black Americans may have been a significant motivating factor, the Supreme Court has rejected the argument that §

242 applies only to deprivation of rights based on race. *United States v. Classic*, 313 U.S. 299, 326-27 (1941) ("That the qualification with respect to alienage, color and race, refers only to differences in punishment and not to deprivations of any rights or privileges secured by the Constitution, is evidenced by the structure of the section and the necessities of the practical application of its provisions."). The *Classic* Court recognized that the statute's "meager legislative history" reflects an intent to protect the federal rights of all individuals, regardless of race. *Id.* at 327 n.10. For instance, the statute was amended to extend protections to noncitizens. *Id. Classic* forecloses Defendant's argument that § 242 can only apply to racial discrimination. *See* Def. Reply 6-8, ECF 38. The statute's purpose is more properly viewed as protecting vulnerable individuals from deprivation of their federal rights by those acting under color of law.

Defendant's suggestion that the statute is overbroad because it applies to all state employees is also misplaced. The key is whether the defendant's position as a state employee or other apparent authority as an agent of the state permitted him to commit the charged acts. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) ("At bottom, the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.") (internal quotations omitted).

The Court also rejects Defendant's argument that circumstances have changed such that § 242 is no longer justified. Def. Reply 5-6. The statute was enacted to protect vulnerable individuals from deprivation of federally secured rights by state actors. Unfortunately, vulnerable individuals continue to face deprivation of their federal rights by state actors. Defendant has not provided evidence to convince this Court that § 242 is obsolete in our society.

The Supreme Court has concluded that § 242 was within Congress's power to enact and that it was intended to address more than racial discrimination. The Court declines to hold that Congress exceeded its authority in enacting the statute, or that society has changed such that the statute can no longer be upheld.

D.    Whether Defendant Acted Under Color of Law

Defendant's final argument is that the Court must read the statute narrowly to avoid encroaching on criminal enforcement traditionally handled by the states. Def. Mot. to Dismiss Count One 16-17. Defendant asserts that when the statute is read narrowly, he did not act under color of law. *Id.* at 18-22.

i.    Federalism Concerns

The Supreme Court has recognized that our federal system generally leaves regulation of local criminal activity to the states. *Bond v. United States*, 572 U.S. 844, 848 (2014). Accordingly, federal courts should "generally decline[] to read federal law as intruding on that responsibility, unless Congress has clearly indicated that the law should have such reach." *Id.* In *Bond*, the Supreme Court saw no such indication in the Chemical Weapons Convention Implementation Act and declined to read it to cover a purely local crime involving chemicals. *Id.*

The *Screws* Court recognized that § 242 implicates federalism concerns. 325 U.S. at 108 ("We agree that when this statute is applied to the action of state officials, it should be construed so as to respect the proper balance between the States and the federal government in law enforcement. Violation of local law does not necessarily mean that federal rights have been invaded."). *Screws* concerned local police officers in Georgia who beat a suspect while arresting him. *Id.* at 110-11. The Supreme Court concluded that the officers' conduct was not outside the scope of the statute for federalism reasons. *Id.* at 111-12.

The language of § 242 reflects Congress's intent to cover state officials who deprive individuals of their federal rights even if such conduct is purely local. The legislative history that Defendant relies on elsewhere in his argument supports this interpretation. *See* Def. Mot. to Dismiss Count One 15. And in *Screws*, the Supreme Court interpreted the statute to apply to purely local activity by local police officers. The Court now turns to whether Defendant acted under color of law.

     ii.  Under Color of Law

Defendant argues that § 242 was not intended "to cover routine employment misconduct."[1] *Id.* at 17. Defendant asks the Court to determine that his conduct, or the nature of his position, is insufficient as a matter of law to justify imposing criminal penalties under § 242. The Court declines this invitation because it is inconsistent with binding precedent.

"[C]onduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* The two requirements "collapse into each other when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions." *Id.* They "diverge when the constitutional claim is directed against a party without such apparent authority, *i.e.*, against a private party." *Id.*

"[S]tate employment is generally sufficient to render the defendant a state actor." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotations omitted). "[G]enerally, a public employee

---

[1] The Court does not agree that sexual assault is routine employment misconduct.

acts under color of state law while acting in his official capacity or while exercising his
responsibilities pursuant to state law." *Id.* at 50. An exception exists for public defenders who are
performing their functions as defense counsel in a criminal proceeding because they retain all the
attributes of a private attorney, including professional independence, which requires them to act
as adversaries to the state. *Id.* (citing *Polk County v. Dodson*, 454 U.S. 312 (1981)).

The Court agrees with the Government that a finding that Defendant did not act under
color of law is inappropriate at this stage of the case. Gov. Resp. 12. As Defendant
acknowledges, this question of law is a fact-intensive question. Def. Reply 9. The indictment
alleges that Defendant, a state employee, was performing his job duties by taking AV1 on an
outing in a secure van when he committed the sexual assault. Indictment ¶¶ 1, 7-9. This is
enough to support the allegation that Defendant acted under color of state law.

Defendant's arguments to the contrary lack merit. Although Defendant argues that
"[b]eing a state employee alone is not sufficient to resolve the question," Def. Reply 9, he fails to
show that it is insufficient here. *West* provides that state employment alone usually *is* enough.
And Defendant is not similar to public defenders, who are required to exercise professional
independence and act in opposition to the state in order to represent their clients. In terms of his
job duties, Defendant is much more similar to the physician in *West*, whom the Supreme Court
concluded was not in conflict with the state when treating prisoners. 487 U.S. at 51.

Defendant also argues that he was not acting under color of law because he was not
performing an exclusive state function. Def. Mot. to Dismiss Count One 19-20. Cases addressing
whether an individual acted under color of law make it clear that such acts are not limited to
those that are exclusively state functions. *See Rawson*, 975 F.3d at 747-48 (discussing four tests
for determining whether a private actor was acting under color of law, only one of which

requires an exclusive state function).[2] And here Defendant was a state employee and is alleged to have committed the offense while performing his job duties. Cases addressing whether private actors are properly considered state actors are inapposite.

Next, Defendant argues that he acted "in a quintessentially private manner." Def. Mot. to Dismiss 20. It is true that not all actions by state employees are under color of law. To make this point, Defendant relies on *Gritchen v. Collier*, 254 F.3d 807 (9th Cir. 2001). In *Gritchen*, the Ninth Circuit held that a police officer did not act under color of law when he threatened to sue a motorist for defamation after the motorist filed a citizen complaint against him for his behavior during a traffic stop. *Id.* at 809-10. The Ninth Circuit reasoned that threatening suit was not part of the officer's duties, the police department was not involved in the suit in any way, pursuing private litigation did not abuse the officer's position, and the suit was quintessentially personal. *Id.* at 813-14.

This case is not like *Gritchen*. First, the officer in *Gritchen* threatened suit after the traffic stop was over, while here Defendant allegedly committed the sexual assault during a state-sanctioned outing with AV1. Second, for similar reasons, the State of Oregon *was* involved. Third, the sexual assault *did* abuse Defendant's position as a state employee. Finally, while the sexual act itself may have been personal, it allegedly occurred during a government-sanctioned outing when AV1 was in the care and custody of Defendant in his capacity as a state employee. As the Government argues, the indictment alleges that Defendant was only in a position to commit the offense because of his state employment. Gov. Resp. 14-15. *See also Screws*, 325 U.S. at 111 ("[A]cts of officers in the ambit of their personal pursuits are plainly excluded. Acts

---

[2] The Court, like Defendant, cites to cases addressing the standard for state action or acts under color of law in the context of civil suits under 42 U.S.C. § 1983. *See* Def. Mot. to Dismiss Count One 18 n.2; *Price*, 383 U.S. at 794 n.7 (holding that the standards are the same).

of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."). The indictment adequately alleges that Defendant acted under color of law.

In sum, Defendant's challenges to § 242 lack merit. The indictment adequately alleges the elements of the offense. Count One will not be dismissed.

## III.    Count II

Count two of the indictment charges Defendant Glover with kidnapping in violation of 18 U.S.C. § 1201(a)(1). Indictment ¶¶ 13-14. The statute provides for criminal punishment for

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when . . . the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

18 U.S.C. § 1201(a)(1). Relevant here is the use of an instrumentality of interstate commerce, specifically, a van and a cell phone. Indictment ¶ 14.

Defendant moves to dismiss this count because "it fails to charge a valid federal offense in the absence of crossing state lines or other substantial federal nexus." Def. Mot. to Dismiss Count Two 1. Defendant brings both a facial and an as-applied challenge to the statute. *Id.* at 3. For his facial challenge, he argues that Congress lacked power to enact the statute under the Commerce Clause. *Id.* For his as-applied challenge, Defendant argues that the alleged kidnapping was purely intrastate and had an insufficient nexus to interstate commerce. *Id.* The Court concludes that the statute is constitutional both facially and as applied.

A.    Standard

To mount a facial challenge to the kidnapping statute, Defendant "must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. He attempts to do so by arguing that the statute exceeds Congress's legislative authority under the Commerce Clause.

The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power." *United States v. Lopez*, 514 U.S. 549, 558 (1995). "First, Congress may regulate the use of the channels of interstate commerce." *Id.* "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Id.* "Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.,* those activities that substantially affect interstate commerce." *Id.* at 558-59 (citations omitted). To determine whether an activity substantially affects interstate commerce, courts are to consider: (1) whether the statute regulates economic activity, (2) whether the statute contains a jurisdictional element relating to interstate commerce, (3) whether Congress made findings about the effects on interstate commerce, and (4) whether the link between the regulated activity and the effect on interstate commerce is attenuated. *Id.* at 559-64; *Morrison*, 529 U.S. at 610-12.

The Ninth Circuit has upheld at least one statute comparable to the federal kidnapping statute as a regulation of the instrumentalities of interstate commerce. In *United States v. Dela Cruz*, the Ninth Circuit held that the second *Lopez* category applied to 18 U.S.C. § 844(e). 358 F.3d 623, 625 (9th Cir. 2004). That statute provides:

> Whoever, *through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce*, or in or affecting interstate or foreign commerce,

willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

18 U.S.C. § 844(e) (emphasis added). The Ninth Circuit held that the statute regulated telephones, an instrumentality of interstate commerce. 358 F.3d at 625 (holding that it was not necessary to determine that the regulated activity had a substantial effect on interstate commerce). Further, the government did not need to show that the defendant made calls for interstate purposes with the phone he used to commit the offense, because a telephone is an instrumentality of interstate commerce whether or not it is used for interstate purposes. *Id.* In upholding the bomb threat statute, the Ninth Circuit relied on *United States v. Clayton*, 108 F.3d 1114 (9th Cir. 1997). *Clayton* held that 18 U.S.C. § 1029(a), which regulates fraud in "access devices" (in the case of the defendant, a cell phone and cell phone ID numbers), was a regulation of the instrumentalities of interstate commerce. *Id.* at 1117.

B.    Application

The Government argues that § 1201(a)(1) falls in the second *Lopez* category because it requires proof that the defendant used an instrumentality of interstate commerce to commit the kidnapping. Gov. Resp. 4, ECF 30. Defendant counters that the second *Lopez* category requires that the federal statute be aimed at the instrumentalities of interstate commerce independently of any jurisdictional element. Def. Mot. to Dismiss Count Two 7.

The cases on which *Lopez* relied in discussing the second category do, as Defendant asserts, concern statutes that regulated the instrumentalities themselves or showed a close nexus to the instrumentalities. *Shreveport Rate Cases*, 234 U.S. 342 (1914) (regulation of railroad rates on purely intrastate routes); *Southern R. Co. v. United States*, 222 U.S. 20 (1911) (safety

regulations for trains on intrastate routes that shared rails with interstate routes); *Perez v. United States*, 402 U.S. 146, 150 (1971) (destruction of an aircraft or thefts from interstate shipments).[3]

However, Defendant's reading of *Lopez* is not consistent with the Ninth Circuit's reading. The statute at issue in *Dela Cruz* requires, in relevant part, "use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce." 18 U.S.C. § 844(e). The actual conduct penalized is making a bomb threat. *Id.* The Ninth Circuit held that the statute regulated an instrumentality of interstate commerce (a telephone), and that the government did not need to prove that the defendant used the phone for interstate purposes. *Dela Cruz*, 358 F.3d at 625. Notably, the Ninth Circuit relied on *Clayton*, a case in which the challenged statute directly regulated access devices such as telephones, indicating that the Ninth Circuit does not recognize the distinction Defendant advances.[4]

The federal kidnapping statute is comparable to the federal bomb threat statute in *Dela Cruz*. While the actual conduct penalized is kidnapping, the statute requires the government to prove that the defendant used an instrumentality of interstate commerce in committing the kidnapping. 18 U.S.C. § 1201(a)(1). Under the Ninth Circuit's interpretation of *Lopez*, the kidnapping statute is a constitutional exercise of Congress's Commerce Clause power under *Lopez* category two. The Government correctly notes that all courts to address this question have come to the same conclusion. Gov. Resp. 3-4.

---

[3] At oral argument, the Government agreed that the federal kidnapping statute does not target the instrumentalities of interstate commerce.

[4] Defendant relies on *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003), for the proposition that a jurisdictional element is not enough if the activity is otherwise purely local. Def. Mot. to Dismiss Count Two 12-13; Def. Reply 2, ECF 37. But the Ninth Circuit recognized that later Supreme Court jurisprudence on the Commerce Clause had largely overruled *McCoy*, including on that point. *United States v. Bremner*, 841 F. App'x 33, 34 (9th Cir. 2021).

Defendant argues that *Dela Cruz* does not resolve his case because it did not address any challenge to Congress's Commerce Clause power under the second *Lopez* category. Def. Supp. Br. 2, ECF 43. Defendant is correct that the defendant in *Dela Cruz* asserted that a substantial effect on interstate commerce was required, which falls under the third *Lopez* category. *See* 358 F.3d at 625. The Ninth Circuit held that "[b]ecause a telephone is an instrumentality of interstate commerce, no substantial effects inquiry is needed." *Id.* In other words, the statute did not need to pass the test under the third *Lopez* category because it was a constitutional exercise of Congress's Commerce Clause power under the second *Lopez* category. *Dela Cruz* addresses the issue Defendant raises: the scope of Congress's Commerce Clause power under the second *Lopez* category.

Next, Defendant argues that the statute at issue in *Dela Cruz*, 18 U.S.C. § 844(e), is distinguishable from the federal kidnapping statute because it directly regulates an instrumentality of interstate commerce. Def. Supp. Br. 3-4. According to Defendant, 18 U.S.C. § 844(e) is directed at the instrumentality, and "if one removes the instrumentality from consideration, the entire crime disappears, as does the harm." *Id.* at 3. But the statute also criminalizes making a threat "in or affecting interstate or foreign commerce" with no requirement of the use of an instrumentality of interstate commerce. 18 U.S.C. § 844(e). The conduct at which the statute is aimed is the making of the threat. Use of an instrumentality of interstate commerce is one jurisdictional basis in the statute. In contrast, the statute at issue in *Clayton*, 18 U.S.C. § 1029, directly regulates "access devices" because it criminalizes fraud in access devices (as opposed to another type of fraud that happens to use an access device). *Dela Cruz* did not distinguish the two statutes. The case establishes that the Ninth Circuit does not require a statute to be aimed at an instrumentality of interstate commerce to be constitutional

under *Lopez* category two. Thus, the federal kidnapping statute is a constitutional exercise of Congress's Commerce Clause power under the second *Lopez* category.

*Dela Cruz* also forecloses Defendant's as-applied challenge. Defendant does not dispute that the indictment alleges that he used a vehicle and a cell phone in committing the offense, or that vehicles and cell phones are instrumentalities of interstate commerce. Def. Mot. to Dismiss Count Two 8. The Government need not prove that either instrumentality was actually used in interstate commerce. *See Dela Cruz*, 358 F.3d at 625.

Finally, Defendant argues in the alternative that "use" of an instrumentality of interstate commerce should be read to require "an active employment of that instrumentality in interstate commerce." Def. Reply 12-13. Defendant relies on *Bailey v. United States*, 516 U.S. 137, 144 (1995), which interpreted "use" of a firearm in 18 U.S.C. § 924(c) to require "active employment" of the firearm.

The interpretation Defendant advances is inconsistent with *Dela Cruz*'s conclusion that a phone is an instrumentality of interstate commerce whether or not the defendant used it in interstate commerce and that the government need not prove use in interstate commerce. 358 F.3d at 625. It is also inconsistent with the text of the statute. The kidnapping statute provides several other jurisdictional bases, including where the victim is "transported in interstate or foreign commerce" or "the offender travels in interstate or foreign commerce." 18 U.S.C. § 1201(a)(1). Congress did not specify that an instrumentality of interstate commerce had to be used in interstate commerce, though it clearly appreciated the distinction between "in interstate commerce" and "of interstate commerce." The only reasonable interpretation of the statute is that the instrumentality must be of the kind that is commonly used in interstate commerce, not that it must actually be used in interstate commerce. Because the statute is not ambiguous, the rule of

lenity does not apply. *United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir. 1991) ("The rule plays no role in statutory interpretation unless the statute is truly ambiguous.").

      Defendant correctly points out that "cars and phones are ubiquitous in modern life." Def. Reply 3. Under the expansive interpretation of the second *Lopez* category the Government advances, many crimes that have traditionally been handled by the states may fall under the purview of federal jurisdiction, which raises concerns in our federal system. However, this Court is bound by the Ninth Circuit's interpretation of *Lopez*, which is in line with the Government's position.

      In sum, under current Ninth Circuit law, the federal kidnapping statute was within Congress's power to enact and is not unconstitutional as applied to Defendant. Count Two of the indictment will not be dismissed.

## CONCLUSION

      The Court DENIES Defendant's Motion to Dismiss Count One [24] and Motion to Dismiss Count Two [25].

      IT IS SO ORDERED.

DATED:_____May 7, 2023_____.

MARCO A. HERNANDEZ
United States District Judge

22 – OPINION & ORDER